SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
8367 West Flamingo Road, Suite 100
Las Vegas, Nevada 89147
Tel.: (702) 304-0432
Fax:  (702) 922-3851

*Attorney for Plaintiffs*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CASIMIR JOHN ZULKOWSKI,<br><br>Debtor | Case No.: 2:11-bk-19365-LBR<br>Chapter 7<br><br>ADVERSARY CASE NO.: |
| ADI GREENBERG, an individual; and<br>CHRISTINE R. MARRS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CASIMIR JOHN ZULKOWSKI, an<br>individual; and BILL BLAZVICK, an<br>individual,<br><br>Defendants. | **ADVERSARY COMPLAINT FOR CONVERSION, FRAUD, UNJUST ENRICHMENT, FRAUDULENT TRANSFER, PREJUDGMENT WRIT OF ATTACHMENT AND INJUNCTIVE RELIEF AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Adi Greenberg ("Greenberg") and Christine R. Marrs ("Marrs" and collectively referred to herein with Greenberg as the "Plaintiffs") hereby complain pursuant to Federal Rule of Bankruptcy Procedure 7001 against Defendant Debtor Casimir John Zulkowski ("Debtor") and Bill Blazvick ("Blazvick") as follows:

1

## I.    NATURE OF ACTION AND JURISDICTION

1.      This is an adversary action brought pursuant to Federal Rule of Civil Procedure 7001.

2.       Pursuant to 28 U.S.C. § 1334, this Court has original and exclusive jurisdiction over all actions under Title 11 of the United States Bankruptcy Code. This is a core proceeding arising under Title 11 of the United States Bankruptcy Code in that it is, among other things, a complaint against relief from bankruptcy as provided for under 28 U.S.C. § 157.

3.      As set forth herein, Debtor is alleged to have engaged in acts that prohibit discharge pursuant to, at least, 28 U.S.C. § 523(a)(4) and (6).

## II.    PARTIES

4.      Greenberg is, and has been at all times relevant to this lawsuit, a resident of the State of Nevada residing in Clark County.

5.      Marrs is, and has been at all times relevant to this lawsuit, a resident of the State of Nevada residing in Clark County.

6.      Upon information and belief, Debtor is believed to reside in either the State of Nevada, Clark County or in the State of California, San Diego County.  Debtor has sought a voluntary Chapter 7 discharge from this Court.

7.      Upon information and belief, Blazvick is, and has been at all times relevant to this lawsuit, a resident of the State of Nevada residing in Clark County.

## III.    FACTS

**A.     The Divorce Proceedings.**

8.      Debtor and Marrs were previously married.  Marrs obtained a decree of divorce from Debtor through the Eighth Judicial District Court, Family Division Case No. D-09-416040-D on February 4, 2011 (the "Divorce Proceedings").

9.      During the course of the Divorce Proceedings, the Debtor testified that he did not own a certain 2005 Custom Motorcycle (the "Motorcycle"), which was allegedly purchased

2

during the marriage and that was alleged to constitute an asset of the community estate. Marrs relinquished her claim to that the Motorcycle constituted an asset of the community estate in reliance on the truthfulness of the Debtor's sworn testimony in the divorce proceedings.

10. As part of the Divorce Proceedings, Debtor and Marrs agreed to permit the family court to adjudicate whether certain assets and liabilities were attributable to the community estate. The Motorcycle was not included as an asset for adjudication by the family court based on the Debtor's sworn deposition testimony.

11. On May 17, 2011, the family court issued an Order Allocating Community Assets and Community Debt (the "Property Allocation Order").

12. The Property Allocation Order determined, contrary to Debtor's contention, that a 1996 Jeep Cherokee Sport (VIN 1J4FJ68S9TL124314) (the "Jeep") constituted a community property asset to which Marrs was entitled to half of the value received upon sale.

13. The Property Allocation Order further determined, contrary to Debtor's contention, that a 2000 Rinker 232 Captiva Boat (VIN RNK65206C000) (the "Boat") and a 2000 Zieman Trailer (VIN 1212CB22T2XXL000064) (the " Boat Trailer") constituted a community property asset to which Marrs was entitled to half of the value received upon sale.

14. The Property Allocation Order additionally determined that $61,293.97 in attorney's fees and costs incurred during the marriage was a community debt that should be equally apportioned between the Debtor and Marrs (the "Community Attorney's Fees Debt").

15. The Property Allocation Order required the Debtor to surrender the Jeep, the Boat, and the Boat Trailer to Marrs' counsel on or before June 15, 2011 so these assets could be sold by Marrs with the net proceeds to be split between her and the Debtor.

16. During the Divorce Proceedings, the Debtor claimed the Boat and the Boat Trailer were subject to an encumbrance by Blazvick. The Property Allocation Order expressed doubt over the viability of the alleged encumbrance of the Boat and the Boat Trailer by stating that

3

proceeds from the sale of these assets would only deduct for the alleged encumbrance if it is valid and enforceable.

17.     Debtor testified during the divorce proceedings that he was in the process of surrendering the Boat and the Boat Trailer to Blazvick.  Debtor reiterated this position to Marrs' counsel during a telephone call in or about May 2011 in response to an inquiry about whether or not he intended to surrender the assets as required by the Property Allocation Order.  Debtor further maintained this position during his 341 examination held in connection with his chapter 7 petition. Blazvick is listed as a creditor holding a secured interest in the Boat and the Boat Trailer in Debtor's schedules filed in connection with his chapter 7 petition.

**B.     The Trailer Action.**

18.     Prior to the entry of the divorce decree, Greenberg and Marrs instituted an action in the Eighth Judicial District Court (Case No. A-10-631675-C) that sought to compel Debtor to return a certain 2006 Weekend Warrior M-4005 CL Trailer (bearing Vehicle Identification Number 5HRSS40396C013648) (the "Trailer") to their possession and to adjudicate Debtor's repayment obligations concerning an encumbrance for which the proceeds were used for his benefit and for Marrs' benefit during their marriage (the "Trailer Action").

19.     Marrs acquired the Trailer before her marriage to the Debtor through a wire transfer payment from a checking account maintained exclusively by her and to which the Debtor did not have access.

20.     Marrs paid cash for the Trailer.  As such, the Trailer was not subject to an encumbrance at the time it was purchased.

21.     The Trailer was not registered in Marrs' name after she took possession of it.  The Certificate of Title, however, was fully endorsed by the prior owner of the Trailer.

22.     At no time did Debtor hold title to the Trailer.

4

23.     During the course of her marriage to the Debtor, Marrs and Debtor obtained a loan secured by the Trailer.  Greenberg offered to secure the loan in his name because more favorable repayment terms could be obtained through his financial institution.

24.     Debtor lacked sufficient credit worthiness to obtain a loan against the trailer. Marrs, however, had sufficient credit worthiness to do so, but the terms offered to Greenberg were more favorable.

25.     Debtor had possession of a vehicle capable of transporting the Trailer, which is referred to as a "fifth wheel."  Neither Greenberg nor Marrs possessed a vehicle capable of transporting the Trailer.

26.     Greenberg's financial institution agreed to issue a loan secured by the Trailer in the approximate amount of $50,0000 (the "Trailer Loan").

27.     In order to facilitate the Trailer Loan, Debtor transported the Trailer to a State of Nevada Department of Motor Vehicles inspection station on September 29, 2007.

28.     A certificate of title was then issued by State of Nevada Department of Motor Vehicles in the name of Greenberg and which listed his financial institution as the lien holder.

29.     The Trailer Loan proceeds were disbursed by Greenberg's financial institution and Debtor enjoyed the benefits of said proceeds through the payment of certain community living expenses and other items during the course of his marital union with Marrs.

30.     As a result of having the only vehicle capable of transporting the Trailer, Debtor had the ability to exert dominion and control over it.  In fact, Debtor has exercised exclusive dominion and control over the Trailer since its purchase by Marrs.

31.     At some point following Debtor's separation from Marrs, Debtor allegedly relocated the Trailer to Mexico for the purpose of using as his own beachside hideaway with the intent of retiring in it someday.

32.     At no time did Debtor make any payments required under the Trailer Loan.

33.     To date, Marrs has made all payments toward retiring the Trailer Loan obligation.

34.     Greenberg demanded Debtor return the Trailer to him because he is the registered owner and it is collateral for the Trailer Loan.  Debtor refused, and has since continued to refuse, to return the Trailer to Greenberg despite not being the registered owner or otherwise holding title to it.

35.     Greenberg and Marrs instituted the Trailer Action in the Eighth Judicial District Court because the action was not subject to family court jurisdiction since Greenberg, a non-party to the Divorce Proceedings, held, and continues to hold, title to the Trailer.

36.     During both the Divorce Proceedings and the Trailer Action, the Debtor maintained that he owned all right, title and interest in and to the Trailer.

37.     Greenberg and Marrs applied for, and the district court granted, an Order to Show Cause in the Trailer Action requiring the Debtor to explain why the Trailer should not be surrendered to them.

38.     Following the Order to Show Cause hearing, the district court entered an order requiring the Debtor to surrender the Trailer to Greenberg and Marrs, through their counsel, on or before 5:00 p.m. on June 2, 2011 (the "Trailer Surrender Order").

**C.     The Debtor's Fraudulent Concealment of Assets And Usurpation of The Property Allocation Order And The Trailer Surrender Order Through His Chapter 7 Bankruptcy Filling.**

39.     Shortly before the date upon which the Debtor was ordered by the district court to surrender the Trailer he called Plaintiffs' counsel and advised that it had mysteriously burned to the ground in Mexico.  Plaintiffs' counsel requested that the Debtor provide photographic proof and any related documentation filed with Mexican authorities that the Trailer had been destroyed in a fire.  The Debtor agreed to provide the requested materials, but he failed to do so.

40.     During the above referenced telephone call, the Debtor expressed displeasure with the family court's determinations set forth in the Property Allocation Order.  The Debtor stated that he would be appealing the Property Allocation Order through a filing with family court that

6

same day.  The Debtor failed to make any such filing. The Debtor further stated that the Boat and the Boat Trailer had been surrendered to Blazvick because he was going to foreclose upon his security interest based o the Debtor's non-payment on the alleged encumbrance.  Debtor was told that his surrender of the Boat and the Boat Trailer to Blazvick was a violation of the Property Allocation Order and to advise Blazvick of the same.  The Debtor then stated the Jeep was still in Mexico, inoperable and that he had no intention of returning it to the jurisdiction for surrender as required by the Property Allocation Order.

41.    Based on the Debtor's representations, Marrs and Greenberg, through counsel, filed a status report on May 31, 2011 with the district court concerning the Debtor's apparent refusal to abide by the Trailer Surrender Order based on the alleged destruction of the Trailer by a fire in Mexico. The district court set a status check for June 15, 2011, at which time the Debtor was to explain why he had not complied with Trailer Surrender Order.  The status check was to occur on the same day the Debtor was required to surrender the Jeep, the Boat, and the Boat Trailer to Marrs pursuant to the Property Allocation Order entered in the Divorce Proceedings.

42.    The day before the Debtor was to appear in district court to explain why he had failed to comply with the Trailer Surrender Order, which was also the day before he was to surrender the Jeep, the Boat, and the Boat Trailer to Marrs pursuant to the Property Allocation Order entered in the Divorce Proceedings, he sought chapter 7 bankruptcy protection. The Debtor's chapter 7 filing resulted in issuance of an automatic stay that prevented Marrs and/or Greenberg from seeking relief in either district court or family court based on the Debtor's violation of the Property Allocation Order and his violation of the Trailer Surrender Order.

43.    The Debtor's chapter 7 petition did not list the Trailer as an asset to which he claimed all right, title and interest in and to as claimed in the Divorce Proceedings and in the Trailer Action.  The Debtor further testified during his 341 examination that the Trailer had been destroyed by a fire in Mexico. The Debtor listed the Trailer Loan as a repayment obligation sought to be discharged through his chapter 7 bankruptcy case.

7

44.     The Debtor's chapter 7 petition did not list the Motorcycle as an asset, which was likely done in reliance on his testimony in the Divorce Proceedings that he did not own a motorcycle.

45.     During his 341 examination, the Debtor testified the Jeep was in an inoperable condition in Mexico and had little value.

46.     The Debtor's chapter 7 petition listed the Boat and the Boat Trailer was subject to an encumbrance by Blazvick.

47.     The Debtor testified during this 341 examination that he had surrendered the Boat and the Boat Trailer to Blazvick.

48.     Contrary to the Debtor's sworn statements made in support of his request for discharge, as of the filing of his chapter 7 bankruptcy petition, he was concealing the whereabouts of the Trailer at private property outside of El Cajon, California.  A fire in Mexico had not destroyed it.  To date, the Debtor has continued to actively conceal the Trailer's whereabouts in furtherance of his scheme to fraudulently obtain a chapter 7 discharge while concurrently retaining possession of this asset despite Marrs' and Greenberg's right, title and interest in same.

49.     Contrary to the Debtor's sworn statements made in support of his request for discharge, he in fact owned the Motorcycle and was actively concealing its whereabouts, which at one time were believe to be on the same private property where the Trailer was being stored. To date, the Debtor has continued to actively conceal the Motorcycle's existence and whereabouts in furtherance of his scheme to fraudulently obtain a chapter 7 discharge while concurrently retaining possession of this asset despite Marrs' potential community property interest in same.

50.     Contrary to the Debtor's sworn statements made in support of his request for discharge, held possession of the Boat and the Boat Trailer.  Contrary to his representations at his 341 examination, the Debtor continues to have possession of, and to actively conceal the

8

whereabouts of, the Boat and the Boat Trailer. The Debtor's concealment of the Boat and the Boat Trailer's whereabouts is and has been done in furtherance of a scheme to fraudulently obtain a chapter 7 discharge while concurrently retaining possession of these assets despite Marrs' community property interest in same.

51.     In his chapter 7 bankruptcy petition, the Debtor listed an address for his place of residence at which he had not resided for at least a month prior to seeking bankruptcy protection. The Debtor further listed his business address as a location he had not occupied for several months.  The Defendant additionally failed to disclose that he had been residing in California for several months prior to seeking bankruptcy protection.  The Debtor's failure to disclose the foregoing information was done in furtherance of his scheme to fraudulently obtain a chapter 7 discharge while concurrently retaining possession of the Jeep, Boat, the Boat Trailer, and the Motorcycle through active concealment of these assets.

52.     The Debtor's chapter 7 bankruptcy petition listed the Community Attorney's Fees Debt in its accompanying schedules.

53.     The Debtor chapter 7 bankruptcy petition fraudulently misrepresented that his business was not an on-going concern when, in fact, he continues to operate the business from an address different from that listed in his bankruptcy schedules.  Furthermore, the Debtor misrepresented that he was exclusively receiving disability payments as his source of income when, in fact, he continues to receive income from his business operations.  Debtor's misrepresentations and/or omission were done in furtherance of his scheme to obtain a chapter 7 bankruptcy discharge to which he is not entitled.

54.     The Debtor's chapter 7 bankruptcy petition was filed with an intent to fraudulently obtain a discharge of his portion of the Community Attorney's Fees Debt, the Trailer Loan, and to subvert the requirements of the Trailer Surrender Order and the Property Allocation Order while retaining possession of the Jeep, Boat, the Boat Trailer, and the Motorcycle through the benefit of his active concealment of these assets.

55.     The Debtor's is not entitled to receive a chapter 7 discharge based on his fraudulent concealment of assets potentially part of the bankruptcy estate.  Moreover, the Debtor is not entitled to receive a chapter 7 discharge based on his intentional misrepresentations and/or omissions contained in his filings and testimony made in support thereof.

**FIRST CLAIM FOR RELIEF - FRAUD**

56.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 55 above.

57.     Plaintiffs, collectively or individually, are entitled to possession of the Trailer as determined by the district court and as contained in the Trailer Surrender Order.

58.     The Debtor fraudulently misrepresented the Trailer had been destroyed by a fire in Mexico when it had not.

59.     The Debtor failed to disclose, consistent with his claims in the Divorce Proceedings and the Trailer Action, that he held an ownership interest in the Trailer.

60.     The Debtor actively concealed, and continues to conceal, the whereabouts of the Trailer as part of a scheme to fraudulently obtain a chapter 7 discharge while continuing to retain possession of this asset despite Marrs' and/or Greenberg's right, title and interest in same.

61.     Marrs is entitled to possession of the Boat and the Boat Trailer so that these assets can be sold pursuant to the Property Allocation Order.

62.     The Debtor has fraudulently misrepresented the Boat and the Boat Trailer have been surrendered to Blazvick.

63.     The Debtor and Blazvick are believed to have acted in concert in an attempt to allow the Debtor to retain possession of the Boat and the Boat Trailer after fraudulently obtaining a chapter 7 discharge based, in part, on the viability of Blazvick's purported security interest in these assets.  Upon information and belief, the Debtor and Blazvick have, among other things, created documentation that attempted to justify the security interest in the Boat and the Boat Trailer as part of the Divorce Proceedings by back dating numerous payments and related

10

agreements.  The Debtor has continued to rely upon the viability of these documents in seeking his chapter 7 discharge.

64.    Upon information and belief, the Debtor and Blazvick have acted in concert to further the fraudulent misrepresentation the Debtor has surrendered possession of the Boat and the Boat Trailer, while the Debtor continues to retain possession of these assets.

65.    Upon information and belief, Blazvick knows the Debtor has falsely claimed that he surrendered possession of the Boat and the Boat Trailer based on enforcement of the security interest in same.

66.    The Debtor fraudulently concealed, and continues to conceal, his ownership of the Motorcycle in order to avoid a claim by Marrs that she holds a community property interest in this asset.  Debtor's fraudulent concealment of the Motorcycle has further been done so that he can obtain a chapter 7 discharge while retaining possession of this asset.

67.    Upon information and belief, the Debtor has fraudulently misrepresented the condition and/or the location of the Jeep in order to obtain a chapter 7 discharge while retaining possession of this asset despite Marrs' community property interest in same.

68.    In furtherance of the Debtor's fraudulent acts, he has listed the Community Attorney's Fees Debt as part of his chapter 7 petition despite knowledge that he has fraudulently concealed his possession of and/or the condition of potential bankruptcy estate assets.  Debtor has listed the Community Attorney's Fees Debt as part of his chapter 7 bankruptcy petition as part of his scheme to fraudulently obtain a bankruptcy discharge and avoid his repayment obligations under the Property Allocation Order.

69.    Debtor's scheme to fraudulently obtain a discharge and to conceal his possession of and/or the condition of the Jeep, the Trailer, the Boat, the Boat Trailer, and the Motorcycle including misrepresenting and/or concealing the true location of his place of residence and/or the location of his business.

70.     The Debtor's fraudulent scheme further included concealing the true source of his income from that disclosed in his chapter 7 bankruptcy petition.

71.     The Debtor and/or Blazvick intentionally made the foregoing misrepresentations and/or omissions with knowledge of their falsity.

72.     Plaintiffs have been damaged as a result of the Debtor's and/or Blazvick's conduct.

73.     The Debtor's and/or Blazvick's above described conduct was, and is, willful, wanton and oppressive, thereby justifying an award of punitive damages.

74.     Plaintiffs have been forced to retain the services of an attorney to prosecute this action, and are therefore entitled to recover their attorneys' fees and costs incurred in this action.

## SECOND CLAIM FOR RELIEF - CONVERSION

75.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 74 above.

76.     Plaintiffs, collectively or individually, are entitled to possession of the Trailer as determined by the district court and as contained in the Trailer Surrender Order.  Greenberg holds title to and registration for the Trailer with the Nevada Department of Motor Vehicles.

77.     The Debtor has asserted a fire in Mexico destroyed the Trailer when it had not.

78.     Despite the Plaintiffs' demand for the Trailer's surrender, the Debtor has failed and refused to do so.  The Debtor has likewise failed and refused to surrender the Trailer despite the requirements of the Trailer Surrender Order.

79.     The Debtor actively concealed, and continues to conceal, the whereabouts of the Trailer as part of a scheme to fraudulently obtain a chapter 7 discharge while continuing to retain possession of this asset with an intent to permanently deprive Marrs and/or Greenberg of possession to and ownership of the Trailer.

80.     Marrs is entitled to possession of the Boat and the Boat Trailer so that these community property assets can be sold pursuant to the Property Allocation Order.

12

81.    Marrs has demanded surrender of the Boat and the Boat Trailer, but the Debtor has failed to do so.

82.    The Debtor has misrepresented that the Boat and the Boat Trailer have been surrendered to Blazvick.

83.    The Debtor and Blazvick are believed to have acted in concert in an attempt to allow the Debtor to retain possession of the Boat and the Boat Trailer, in derogation of Marrs' community property interest in these assets, after improperly obtaining a chapter 7 discharge based, in part, on the viability of Blazvick's purported security interest in these assets.

84.    Upon information and belief, the Debtor and Blazvick have acted in concert to further the misrepresentation the Debtor has surrendered possession of the Boat and the Boat Trailer, while the Debtor continues to retain possession of these assets. These misrepresentations have been done with the intent to permanently deprive Marrs of her community property interest in the Boat and the Boat Trailer.

85.    Marrs is entitled to possession of the Jeep so that this community property asset can be sold pursuant to the Property Allocation Order.

86.    Upon information and belief, the Debtor has misrepresented the condition and/or the location of the Jeep in order to obtain a chapter 7 discharge while retaining possession of this asset despite Marrs' community property interest in same.

87.    The Debtor's misrepresentations about the condition of and/or the location of the Jeep have been made in furtherance of a scheme to permanently deprive Marrs of her community property interest in this asset.

88.    Based on the foregoing, Plaintiffs have been damaged by the Debtor's conversion of the Trailer in an amount subject to proof at trial.

89.    Based on the foregoing Marrs has been damaged by the Debtor's conversion of the Jeep in an amount subject to proof at trial.

90.    Based on the foregoing Marrs has been damaged by the Debtor's and/or Blazvick's conversion of the Boat and the Boat Trailer in an amount subject to proof at trial.

91.    The Debtor's and/or Blazvick's above described conduct was, and is, willful, wanton and oppressive, thereby justifying an award of punitive and exemplary damages.

92.    Plaintiffs have been forced to retain the services of an attorney to prosecute this action, and are therefore entitled to recover their attorney's fees and costs incurred in this action.

### THIRD CLAIM FOR RELIEF – UNJUST ENRICHMENT

93.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 92 above.

94.    Plaintiffs, collectively or individually, are entitled to possession of the Trailer as determined by the district court and as contained in the Trailer Surrender Order.  Greenberg holds title to and registration for the Trailer with the Nevada Department of Motor Vehicles.

95.    The Debtor has asserted a fire in Mexico destroyed the Trailer when it had not.

96.    Despite the Plaintiffs' demand for the Trailer's surrender, the Debtor has failed and refused to do so.  The Debtor has likewise failed and refused to surrender the Trailer despite the requirements of the Trailer Surrender Order.

97.    Permitting the Debtor to retain possession of the Trailer, which includes granting his petition for a chapter 7 bankruptcy discharge, would inequitably result in the Debtor being unjustly enriched through his improper conduct.

98.    Marrs is entitled to possession of the Boat and the Boat Trailer so that these community property assets can be sold pursuant to the Property Allocation Order.

99.    Marrs has demanded surrender of the Boat and the Boat Trailer, but the Debtor has failed to do so.

100.    The Debtor has misrepresented that the Boat and the Boat Trailer have been surrendered to Blazvick.

101.    The Debtor and Blazvick are believed to have acted in concert in an attempt to allow the Debtor to unjustly and improperly retain possession of the Boat and the Boat Trailer in derogation of Marrs' community property interest in these assets, after improperly obtaining a chapter 7 discharge based, in part, on the viability of Blazvick's purported security interest in these assets.

102.    Upon information and belief, the Debtor and Blazvick have acted in concert to further the misrepresentation the Debtor has surrendered possession of the Boat and the Boat Trailer, while the Debtor continues to retain possession of these assets. These misrepresentations have been done with the intent to permanently deprive Marrs of her community property interest in the Boat and the Boat Trailer.

103.    Permitting the Debtor to retain possession of the Boat and the Boat Trailer, which includes granting his petition for a chapter 7 bankruptcy discharge, would inequitably result in the Debtor being unjustly enriched through his improper conduct.

104.    Marrs is entitled to possession of the Jeep so that this community property asset can be sold pursuant to the Property Allocation Order.

105.    Upon information and belief, the Debtor has misrepresented the condition and/or the location of the Jeep in order to obtain a chapter 7 discharge while retaining possession of this asset despite Marrs' community property interest in same.

106.    The Debtor's misrepresentations about the condition of and/or the location of the Jeep have been made in furtherance of a scheme to permanently deprive Marrs of her community property interest in this asset.

107.    Permitting the Debtor to retain possession of the Jeep, which includes granting his petition for a chapter 7 bankruptcy discharge, would inequitably result in the Debtor being unjustly enriched through his improper conduct.

108.    The Debtor's and/or Blazvick's conduct constitutes unjust enrichment.

15

109.    Based on the foregoing Marrs and/or Greenberg have been damaged by the Debtor's and/or Blazvick's conduct in an amount subject to proof at trial.

110.    Plaintiffs have been forced to retain the services of an attorney to prosecute this action, and are therefore entitled to recover their attorney's fees and costs incurred in this action.

**FOURTH CLAIM FOR RELIEF – FRAUDULENT TRANSFER**

111.    Marrs repeats and realleges the allegations set forth in Paragraphs 1 through 110 above.

112.    At all times relevant, Marrs constitutes a "creditor" of the Debtor within the meaning of the Uniform Fraudulent Transfer Act ("UFTA"), as codified in Nevada Revised Statutes 112.140, et seq.

113.    The conveyance by the Debtor of the Boat and the Boat Trailer to Blazvick constituted a "transfer" of Marrs' community property interest in the Boat and the Boat Trailer within the meaning of the UFTA.

114.    Upon information and belief, this transfer was fraudulent within the meaning of NRS 112.180(1)(a) and (2) in that it was were orchestrated and implemented by the Debtor and/or Blazvick with the actual intent to hinder, delay, and defraud Marrs, for reasons that include the following:

> a.    The Transfer was made to an "insider";
>
> b.    The Debtor retained possession and control of the property transferred after the transfer;
>
> c.    Marrs demanded surrender of the property transferred as required by the Property Allocation Order;

d.  The value of consideration given and/or the security interest allegedly enforced by Blazvick was not reasonably equivalent to the value of the asset transferred and/or it was fabricated in furtherance of a scheme to deprive Marrs of her community property interest in the transferred assets; and/or

e.  The Debtor was either insolvent at the time the transfer was made or was rendered insolvent as a result of the transfer.

115.  Pursuant to NRS 112.210(1), Marrs is entitled to the following relief against the Debtor and/or Blazvick:

a.  Avoidance and recovery of the Boat and the Boat Trailer transferred by the Debtor to Blazvick;

b.  Recovery of the value of the Boat and the Boat Trailer transferred to the extent necessary to satisfy Marrs' community property interest in these assets;

c.  Attachment or garnishment of the Boat and the Boat Trailer;

d.  An injunction against further disposition by the Debtor and/or Blazvick of the Boat and the Boat Trailer; and

e.  The surrender of the Boat and the Boat Trailer pending resolution of Marrs' fraudulent transfer claim.

116.  Upon information and belief, Blazvick is a transferee of interests in the Boat and the Boat Trailer transferred by the Debtor.

117.  Upon information and belief, Marrs is informed and believes that at all relevant times the Blazvick had actual knowledge of her potential, or actual, community property interest in the Boat and the Boat Trailer and thus does not constitute a purchaser in "good faith" within the meaning of NRS 112.220.  Moreover, Blazvick's alleged enforcement of his security interest

17

in the Boat and the Boat Trailer was done with actual knowledge of Marrs' potential, or actual, community property interest in these assets and done to deprive her of said interests in these assets.

118.    As a result of the foregoing actions, Marrs has been damaged in an amount subject to proof at trial.

119.    The actions of the Debtor and/or Blazvick were willful, fraudulent, and malicious, and Marrs is thereby entitled to an award of punitive and exemplary damages.

120.    Marrs has been forced to retain the services of an attorney to prosecute this action, and is therefore entitled to recover her attorney's fees and costs incurred in this action.

## FIFTH CLAIM FOR RELIEF – DECLARATORY JUDGMENT

121.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 120 above.

122.    Plaintiffs are entitled to possession of the Trailer, but the Debtor has refused to acknowledge their right and has commenced his chapter 7 bankruptcy petition in furtherance of a scheme to permanently deprive Plaintiffs' right to possession of the Trailer.

123.    Marrs is entitled to the surrender and sale of the Jeep so that she may recover her community property interest in this asset

124.    The Debtor has refused to acknowledge Marrs' community property interest in the Jeep and has commenced his chapter 7 bankruptcy petition in furtherance of a scheme to permanently deprive Marrs' community property interest in the Jeep.

125.    Marrs is entitled to the surrender and sale of the Boat and the Boat Trailer so that she may recover her community property interest in these assets.

126.    The Debtor has refused to acknowledge Marrs' community property right in the Boat and the Boat Trailer and has commenced his chapter 7 bankruptcy petition in furtherance of a scheme to permanently deprive Marrs' community property interest in these assets.

18

127.    Upon information and belief, the Debtor has improperly transferred the Boat and the Boat Trailer to Blazvick under the cloak of a fabricated security interest in these assets.

128.    The Debtor has concealed the existence and location of the Motorcycle in furtherance of scheme to deny Marrs her potential community property interest in this asset.  The Debtor's acts of concealment have further been done so that the Motorcycle is not included in the bankruptcy estate.

129.    The Debtor's chapter 7 bankruptcy petition was filed with an intent to fraudulently obtain a discharge of his portion of the Community Attorney's Fees Debt and the Trailer Loan, thereby causing Marrs to be responsible for the full repayment of these debts.

130.    As a result of the foregoing circumstances, an actual, justiciable controversy exists between the parties.

131.    Plaintiffs are entitled to a declaratory judgment quieting title in and to the Trailer in Marrs' and/or Greenberg's name.

132.    Plaintiffs are entitled to a declaratory judgment that compels the Debtor to surrender the Trailer to them.

133.    Plaintiffs are entitled to a declaratory judgment that excludes the Trailer from the Debtor's bankruptcy estate.

134.    Marrs is entitled to a declaratory judgment establishing her community property interest in the Boat and the Boat Trailer in view of Blazvick's alleged security interest in these assets.

135.    Marrs is entitled to a declaratory judgment that compels the Debtor and/or Blazvick to surrender the Boat and the Boat to her so that these assets may be sold and the community property interest from same distributed to her and to the Debtor's bankruptcy estate.

136.    Marrs is entitled to a declaratory judgment that the Motorcycle is a community property asset that was concealed by the Debtor in the Divorce Proceedings.

137.    Marrs is entitled to a declaratory judgment establishing her community property interest in the Motorcycle.

138.    Marrs is entitled to a declaratory judgment that compels the Debtor to surrender the Motorcycle to her so that it may be sold and the community property interest from same distributed to her and to the Debtor's bankruptcy estate.

139.    Marrs is entitled to a declaratory judgment that finds the Debtor's repayment obligation for the Community Attorney's Fees Debt and any repayment obligation under the Trailer Loan may not be discharged as part of his chapter 7 bankruptcy pursuant to

140.    Plaintiffs' request any and all temporary, preliminary and/or permanent injunctive relief to which they are entitled, collectively or individually, to possession of the assets described herein.

141.    Plaintiffs have been forced to retain the services of an attorney to prosecute this action, and are therefore entitled to recover their attorneys' fees and costs incurred in this action.

## SIXITH CLAIM FOR RELIEF – PREJUDGMENT WRIT OF ATTACHMENT AND INJUNCTIVE RELIEF

142.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 141 above.

143.    Plaintiffs, collectively and /or individually, have valid fraud, conversion, unjust enrichment, fraudulent transfer, and declaratory judgment claims against the Debtor and/or Blazvick.

144.    After notice and hearing pursuant to Chapter 31 of the Nevada Revised Statutes, Plaintiffs are entitled to a writ of attachment against certain interests and property held by or otherwise in possession of the Debtor and/or Blazvick.

145.    Alternatively, pursuant to the remedies available in NRS 112, Plaintiffs request that the Debtor and/or Blazvick be enjoined from any further transfer or encumbrance of the assets at issue herein.

146.    Plaintiffs have been forced to retain the services of an attorney to prosecute this action, and are therefore entitled to recover their attorney's fees and costs.

**<u>PRAYER FOR RELIEF</u>**

Plaintiffs, collectively or individual as specified above, request that this Court grant their claims for relief herein as follows:

1.    For an award of damages as a result of the Debtor's and/or Blazvick's fraudulent conduct;

2.    For an award of damages as a result of the Debtor's and/or Blazvick's acts of conversion;

3.    For damages as a result of Debtor's and/or Blazvick's acts constituting unjust enrichment;

4.    For avoidance of the transfer of the Boat and the Trailer from the Debtor to Blazvick;

5.    Recovery of the value of the Boat and the Boat Trailer transferred from the Debtor to Blazvick to the extent necessary to satisfy Marrs' community property interest in these assets;

6.    Attachment or garnishment of the Boat and the Boat Trailer;

7.    An injunction against further disposition by the Debtor and/or Blazvick of the Boat and the Boat Trailer; and

8.    The surrender of the Boat and the Boat Trailer pending resolution of Marrs' fraudulent transfer claim.

9.    For a declaratory judgment quieting title to the Trailer in favor of Marrs and/or Greenberg;

10.    For a declaratory judgment requiring the Debtor to surrender the Trailer to Plaintiffs;

11.    For a declaratory judgment requiring the Debtor to surrender the Jeep to Marrs for sale and recovery of her community property interest in this asset;

12.    For a declaratory judgment establishing the validity and enforceability of Blazvick's alleged security interest in the Boat and the Boat Trailer;

13.    For a declaratory judgment compelling the surrender the Boat and the Boat Trailer to Marrs for sale and recovery of her community property interests in these assets;

14.    For a declaratory judgment determining the Motorcycle to be a community property asset;

15.    For a declaratory judgment establishing Marrs' community property interest in the Motorcycle;

16.    For a declaratory judgment compelling the Debtor to surrender the Motorcycle to Marrs for sale and recovery of her community property interest in this asset;

17.    For issuance of any and all temporary, preliminary and/or permanent injunctive relief to which the Plaintiffs are entitled, collectively or individually, to possession of the assets described herein;

18.    For issuance of a writ of prejudgment attachment;

19.    For a finding that the Debtor's repayment obligation for the Community Attorney's Fees Debt is not dischargeable;

20.    For a finding the Debtor's repayment obligation under the Trailer Loan is not dischargeable;

21.    For an award of attorney's fees and costs incurred in connection with this action;

22.    For an award of pre- and post-judgment interest in accordance with applicable law;

23.    For an award of punitive and exemplary damages against the Debtor and/or Blazvick for fraud, conversion and fraudulent transfer; and

22

24.    Entry of such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury pursuant to Fed. R. Civ. P. 38.


Dated this 17th day of October, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano, Esq.
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
8367 West Flamingo Road, Suite 100
Las Vegas, Nevada 89147
Tel.: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiffs*